Michael S. O Reilly

Phone:  (212) 980-7226

Fax:  (212) 980-7292

michael.oreilly@saul.com

www.saul.com

**SAUL EWING**

LLP

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/23/2024

October 21, 2024

**Via ECF**
The Honorable Barbara Moses
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312



Re:    **X-Caliber Funding LLC v. Petersen, 1:24-cv-05529 (VM) (BM)**

Dear Judge Moses:

We represent Defendant Mark B. Petersen ("Defendant") in the referenced matter.  As the Court is aware, Currently pending before the Court is Plaintiff X-Caliber Funding LLC's ("Plaintiff") motion for summary judgment ("Motion").  (Dkt. 1, 14).  Pursuant to this Court's October 7, 2024, Order ("Order"), Defendant's opposition papers to the Motion are to be filed by October 23, 2024 and Plaintiff's reply papers by October 30, 2023 (Dkt. 16).

Although Your Honor denied Defendant's previous request to take discovery to adequately oppose the Motion (Dkt. 13),  Defendant has recently become aware that Plaintiff and its agents are actively impairing/destroying the value of the collateral underlying the loan that is the subject of the Guaranty in this action and further that Plaintiff has sold the underlying debt and loan documents the Guaranty purportedly secures, raising issues regarding whether X-Calibur is the proper plaintiff to this litigation, thereby requiring either a withdrawal of the Motion or the need for discovery.  In light of Plaintiff's actions (described more fully below), Defendant respectfully requests that Your Honor reconsider the prior ruling and allow discovery of Plaintiff since this matter is neither ripe nor appropriate for summary adjudication.

As the Court may be aware, in October 2019 Plaintiff issued a loan to approximately ten (10) Petersen Health Care facilities (the "Facilities"), in the amount of $40,000,000.00 (the "Loan").  The parties expressly understood that the Loan was intended to be a bridge loan until the U.S. Department of Housing and Urban Development ("HUD") determined it would provide financing for each of the Facilities.  The Facilities are worth far in excess of the Loan amount and serve as the collateral.  The Facilities were amongst the newest and best performing of the approximately 100 operated by Petersen Health Care (of which Defendant is Chief Executive.  In fact, Plaintiff expressly insisted upon these specific Facilities as collateral.  In November 2023, Defendant was hospitalized for an extended period due to liver failure.  He received a liver transplant in April 2023 but was essentially hospitalized continuously from November 2023 to July 2024.  While Defendant was in hospital, Petersen Health Care suffered a ransomware attack and, as a result of that (and not as a result of non-payment), Plaintiff declared the loan in default and in January 2024, began a receivership proceeding in the United States District Court for the Northern District of Illinois, Rockford Division, in the matter captioned *X-Caliber Funding, et al. v. El Paso HCC, LLC et al.*, Case No. 3:24-cv-50034 (the "Receivership

1270 Avenue of the Americas, Suite 2800 ♦ New York, NY 10020 ♦ Phone: (212) 980-7200 ♦ Fax: (212) 980-7292

CALIFORNIA  DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  MINNESOTA  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

53230571.1

Action"). As part of this action, control of the Facilities was taken away from Petersen Health Care. At Plaintiff's insistence, the Court appointed Michael Flanagan (Principal and CEO of Flanagan & Associates, LLC, a direct competitor of Petersen Health Care). Plaintiff's hand-picked Receiver then immediately retained Walnut Creek Management Company, LLC, run by Joseph Tutera, purportedly to "stabilize" the situation. Like Flanagan, Tutera is a direct competitor of Petersen who operates assisted living facilities in the same geographic areas.

In March 2024, Petersen Health Care filed for Bankruptcy with the intent of reorganization or, if necessary, liquidation of its assets to repay creditors, due in no small part to Plaintiff's declaring the loan in default and accelerating obligations thereunder. Plaintiff successfully fought to keep the Facilities outside of the Bankruptcy estate, outside of the purview of the United States Bankruptcy Judge, beyond the reach of both Petersen Healthcare and all other creditors and exclusively in control of the Receiver in the Receivership Action.

Flanagan and Tutera are friends and share the same business address in Missouri (although with different suite numbers). In the Receivership Action, Plaintiff represented to the Court that it would fund any operational shortfalls that occurred during the receivership. Plaintiff has failed to do so. Further, Flanagan and Tutera have mismanaged the Facilities to such an extent that the Receiver filed an Emergency Motion last week to close at least one but possibly two of the Facilities. The Illinois Court will receive opposition to that motion this Friday, October 25, 2024. As part of his proposed plan, the Receiver is moving Petersen Health Care residents to Flanagan facilities that he himself owns. It appears that through the Receivership Action, Defendant's direct competitors have been able run Petersen Health Care's best performing facilities into the ground, move Petersen's residents into Flanagan and Tutera-owned facilities and have now sold off the Loan debt the Facilities secure – likely at a fraction of their worth –to an entity Flanagan and Tutera directly or indirectly own. The impairment of the collateral and destruction of its value by Plaintiff and its agents are directly relevant to the amounts being sought under the guaranty in this action.

Further, Defendant learned last week that on October 11, 2024, Plaintiff X-Caliber sold the debt underlying the Loan and secured by the Facilities to a Tutera-owned entity named Illinois Debt Acquisition Company, L.L.C. ("IDAC"), of which Flanagan is the registered agent. IDAC was formed as a corporate entity the same day the debt and loan were sold to them by Plaintiff in this action. Plaintiff filed a notice to substitute IDAC for X-Caliber in the Receivership Action last week, raising questions of Plaintiff's standing to proceed with this action and the lack of a necessary party. However, it became clear today why Plaintiff has not filed a substitution here.

Earlier today, Defendant learned from counsel for Plaintiff that although Plaintiff assigned all underlying debt and Loan documents to Tutera-owned IDAC, at or about the same time, Tutera assigned back to Plaintiff X-Caliber all "Guarantor Rights" and that Plaintiff intends to continue prosecution of this action on a Guaranty over a debt and Loan documents it assigned to Tutera. Through their actions, Plaintiff and Tutera have given Tutera the right to foreclose on all of the Facilities and obtain ownership for himself or entities he and Flanagan control, completely de-collateralizing the Loan, and have given X-Caliber the right to recover all monetary amounts from Defendant personally.

Defendant does not understand how Plaintiff can be allowed to wrest control of the Facilities from Petersen Health Care, appoint two Petersen competitors as receiver and management company

for the receiver, devalue the Facilities through mismanagement over the course of ten (10) months to such an extent that X-Calibur sold the underlying debt (and control of the Facilities) to Flanagan and Tutera likely for pennies on the dollar and then re-obtain the right through assignment from those Petersen competitors to enforce the Guaranty here. To say Plaintiff's actions have been overly-aggressive and damaging to Defendant personally and to Petersen Health Care and its other creditors overall would be a euphemism for the ages. Plaintiff's conduct has been inequitable and this Court should neither countenance Plaintiff's means nor unwittingly become a lever to allow Plaintiff to exert more pressure to further its inequitable ends.

We respectfully request that the Court immediately stay this action or at the very least hold plaintiff's Motion in abeyance pending the outcome of the Receivership Action in which Plaintiff's actions set forth above will be challenged or, at the very least, schedule an immediate conference in this matter to allow Defendant to take full discovery of Plaintiff on all issues relating to the collateral of the Loan Plaintiff seeks to enforce in this action to allow Defendant to fully and adequately defend himself generally and specifically against the Motion. Defendant cannot adequately defend himself nor oppose the motion without full discovery.

We greatly appreciate the Court's time and attention to this urgent matter.

Respectfully submitted,

Michael S. O'Reilly

cc.: All counsel (via e-mail and PACER)

> Application DENIED without prejudice to defendant's rights under Fed. R. Civ. P. 56(d). Defendant is reminded that Rule 56(d) requires the nonmovant to show "by affidavit or declaration" why he cannot adequately respond to a pending summary judgment motion without discovery. The Clerk of Court is respectfully directed to close the motion at Dkt. 18.
>
> Barbara Moses
> United States Magistrate Judge
> October 23, 2024