# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |
| | **Hearing Date: May 22, 2024 at 10:00 a.m. (ET)** |
| | **Ref. Docket Nos. 59, 60, 61, 118** |

### ORDER APPROVING STIPULATION TO RESOLVE (I) X-CALIBER'S (A) MOTION TO DISMISS, (B) 543 MOTION, AND (C) DIP OBJECTION, AND (II) THE DEBTORS' MT4 MOTION TO DISMISS

Upon the consideration of the *Stipulation to Resolve (I) X-Caliber's (A) Motion to Dismiss, (B) 543 Motion, and (C) DIP Objection, and (II) the Debtors' MT4 Motion to Dismiss* (the "Stipulation"),[2] entered into by and among the Debtors, X-Caliber, X-Caliber Capital, the X-Caliber HUD Entities (via the Receiver), and the Committee, a copy of which is attached hereto as **Exhibit A**, and the related *Certificate of Counsel Regarding Proposed Order Approving Stipulation to Resolve (I) X-Caliber's (A) Motion to Dismiss, (B) 543 Motion, and (C) DIP Objection, and (II) the Debtors' MT4 Motion to Dismiss*; and having determined that this Court has jurisdiction to enter this Order in accordance with 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information is available on a website of the Debtors' claims and noticing agent at www.kccllc.net/Petersen.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stipulation.

dated February 29, 2012; and having determined that due and appropriate notice of the relief provided for herein has been given under the circumstances; and the Court having determined that the agreements set forth in the Stipulation are in the best interests of the Debtors, their estates, their creditors and other parties in interest; and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.    The Stipulation attached to this Order as **Exhibit A** is hereby approved and is incorporated herein by reference.

2.    Pursuant to 11 U.S.C. § 305, the Receivership Debtors' Chapter 11 Cases are hereby suspended subject to the terms of the Stipulation.

3.    At the next hearing scheduled in the Debtors' Chapter 11 Cases (currently scheduled for June 27, 2024, at 10:00 am (ET)), the Debtors shall update the Court regarding the Debtors' sale process.

4.    The Stipulation shall constitute final resolution of the Resolved Pleadings.

5.    Nothing in this Order or the Stipulation shall in any way prime, impact or affect the rights of Hartford Fire Insurance Company or its bond beneficiaries as set forth in paragraph 40 of the DIP Order, including, but not limited to in connection with any sale and the proceeds thereof.

6.    The Court shall retain exclusive jurisdiction to resolve any disputes arising from or related to this Order or the Stipulation.

7.    The Order and the Stipulation shall become effective immediately upon entry of this Order notwithstanding anything in the Federal Rules of Bankruptcy Procedure or otherwise to the contrary.

Dated: May 21st, 2024
Wilmington, Delaware

THOMAS M. HORAN
UNITED STATES BANKRUPTCY JUDGE

2

## EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re** | Chapter 11 |
| **SC HEALTHCARE HOLDING, LLC** *et al.*, | Case No. 24-10443 (TMH) |
| **Debtors.**[1] | Jointly Administered |
| | **Hearing Date: May 22, 2024 at 10:00 a.m. (ET)** |
| | **Ref. Docket Nos. 59, 60, 61, 118** |

### STIPULATION TO RESOLVE
### (I) X-CALIBER'S (A) MOTION TO DISMISS, (B) 543 MOTION, AND (C) DIP OBJECTION, AND (II) THE DEBTORS' MT4 MOTION TO DISMISS

The above-captioned debtors and debtors in possession (each, a "Debtor" and collectively, the "Debtors"), X-Caliber Funding LLC, in its capacity as servicer for U.S. Bank, N.A., as trustee of XCAL 2019-IL01 MORTGAGE TRUST, as lender ("X-Caliber"), X-Caliber Capital, LLC ("X-Caliber Capital"), certain non-Debtor affiliates, Charleston HCC, LLC, Charleston HCO, LLC, Cumberland HCC, LLC, and Cumberland HCO, LLC (each, an "X-Caliber HUD Entity," and collectively the "X-Caliber HUD Entities"), and the official committee of unsecured creditors (the "Committee," and with the Debtors, X-Caliber, X-Caliber Capital, and the X-Caliber HUD Entities, collectively, the "Parties") hereby stipulate and agree as follows:

WHEREAS, on March 20, 2024 (the "Petition Date"), the Debtors each commenced with the United States Bankruptcy Court for the District of Delaware (the "Court") a voluntary case

---

[1] The last four digits of SC Healthcare Holding, LLC's tax identification number are 2584. The mailing address for SC Healthcare Holding, LLC is c/o Petersen Health Care Management, LLC 830 West Trailcreek Dr., Peoria, IL 61614. Due to the large number of debtors in these Chapter 11 Cases, whose cases are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information is available on a website of the Debtors' claims and noticing agent at www.kccllc.net/Petersen.

(collectively, the "Chapter 11 Cases") under title 11 of the United States Code (the "Bankruptcy Code").

WHEREAS, on January 25, 2024, the United States District Court for the Northern District of Illinois, Rockford Division (the "District Court") entered the *Order Appointing Receiver* (the "*El Paso* Order") in the case captioned *X-Caliber Funding LLC v. El Paso HCC, LLC, et al.*, Case No. 3:24-cv-50034 (N.D. Ill.) naming Michael F. Flanagan as receiver (the "Receiver") of the following Debtors (collectively, the "Receivership Debtors"), as and to the extent set forth in the Receivership Order: El Paso HCC, LLC; Flanagan HCC, LLC; Kewanee AL, LLC; Knoxville AL, LLC; Legacy Estates AL, LLC; Marigold HCC, LLC; Monmouth AL, LLC; Polo, LLC; El Paso HCO, LLC; Flanagan HCO, LLC; CYE Kewanee HCO, LLC; CYE Knoxville HCO, LLC; Legacy HCO, LLC; Marigold HCO, LLC; CYE Monmouth HCO, LLC; and Polo HCO, LLC . Thereafter, the Receiver appointed Walnut Creek Management Company, L.L.C. ("Walnut Creek") as the manager operating the Receivership Debtors' facilities.

WHEREAS, pursuant to litigation commenced by X-Caliber Capital, the X-Caliber HUD Entities are also under the supervision of the Receiver pursuant to the *Order Appointing Receiver* (the "*Charleston* Order" and together with the El Paso Order, the "Receivership Orders") entered in the United States District Court for the Central District of Illinois, Urbana Division in the case captioned *X-Caliber Capital LLC v. Charleston HCC, LLC, et al.*, Case No. 2:24-cv-02034 (C.D. Ill.). After entry of the *Charleston* Order, the Receiver appointed Walnut Creek as the manager operating the X-Caliber HUD Entities.

WHEREAS, on March 21, 2024, X-Caliber filed in these Chapter 11 Cases its (A) *Emergency Motion to Excuse Receiver's Compliance with 11 U.S.C. § 543(a) & (b)* [Docket No. 59] (the "543 Motion"), (B) *Emergency Motion for an Order (I) Dismissing the Subject*

Chapter 11 Cases, (II) For Abstention, or (III) Appointment of Receiver as the Chapter 11 Trustee [Docket No. 60] (the "Motion to Dismiss"), and (C) *X-Caliber Funding LLC's Preliminary Objection to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay, (V) Authorizing the Debtors to Enter Into Agreements with JMB Capital Partners Lending, LLC, (VI) Authorizing Non-Consensual Use of Cash Collateral, (VII) Scheduling a Final Hering, and (VIII) Granting Related Relief* [Docket No. 61] (the "DIP Objection").

WHEREAS, the U.S. Trustee filed Limited Objections and Reservations of Rights with respect to both the Motion to Dismiss and the 543 Motion [Docket Nos. 170 and 171].

WHEREAS, on April 1, 2024, pursuant to agreement between the Debtors and X-Caliber, the Court entered the *Order Approving Stipulation to Retain Receiver for Subject Receivership Debtors Pending Further Court Order* [Docket No. 110].

WHEREAS, on April 2, 2024, the Debtors filed *Debtors' Motion for Entry of an Order Dismissing the Chapter 11 Case of Petersen MT4, LLC and Granting Related Relief* [Docket No. 118] (the "MT4 Motion to Dismiss," together with the Motion to Dismiss, the 543 Motion, and the DIP Objection, and any pleadings filed in response thereto (as and to the extent such pleadings respond thereto), collectively, the "Resolved Pleadings").

WHEREAS, some or all of the Parties filed various pleadings in response to the 543 Motion, the Motion to Dismiss, and the MT4 Motion to Dismiss. *See* Docket Nos. 166, 172, 188.

WHEREAS, after discovery and extensive arms' length negotiations, in order to avoid the potential costs, risks, and delay of litigation, the Parties reached an agreement on the Resolved

Pleadings, the summary terms of which were stated on the record at the hearings held before the Court on May 13 and May 14, 2024, and are memorialized in this stipulation (this "Stipulation").

NOW THEREFORE, in consideration of the recitals, covenants, actions, forbearances, and agreements contained herein, and for good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

1.    Suspension of Receivership Debtors' Chapter 11 Cases.  Immediately upon entry of the order approving this Stipulation (the "Order"), and subject to the terms of this Stipulation, including retention of the Bankruptcy Court's jurisdiction with respect to this Stipulation as set forth in paragraph 12 herein, the Receivership Debtors' Chapter 11 Cases shall be suspended pursuant to 11 U.S.C. § 305.

a.    Operations.  Following entry of the Order, pursuant to the terms of the *El Paso* Order, the Receivership Debtors shall be operated by the Receiver and funded by X-Caliber. For the avoidance of doubt, the X-Caliber HUD Entities shall remain non-debtors under the operation of the Receiver subject to the *Charleston* Order, unless the provisions of Paragraph 2(d) below are triggered.

b.    Financial Reporting and Budgets.

i.    On or before May 23, 2024, the Receiver shall provide a 13-week cash flow forecast, one for each of the Receivership Debtors, to X-Caliber, the Receivership Debtors and the Committee and once agreed upon in form and substance by X-Caliber, the Receivership Debtors and the Committee, each such 13-week cash flow forecast shall, collectively, be referred to the "Original Budget." For the sake of clarity, such Original Budget, and subsequent Budgets (as defined below) shall (A) be provided on an entity-by-entity basis, (B) largely resemble in

form and substance the sample provided by the Receivership Debtors to the Receiver on May 15, 2024, (C) contain a consolidating page, and (D) may contain Permitted Variances. "Permitted Variance" means a variance of net operating cash flow on the Budget of no more than 20.0%, which variance shall be (a) provided on a weekly basis and (b) tested on a four (4) week cumulative basis, as opposed to a line-by-line, basis.

ii.      Receiver shall update and roll-forward the Original Budget (each update for each Receivership Debtor, collectively, an "<u>Updated Budget</u>" and collectively with the Original Budget, the "<u>Budgets</u>" and each a "<u>Budget</u>") no less frequently than every four (4) weeks or at such other interval agreed to by X-Caliber, the Receivership Debtors and the Committee, each such Updated Budget to be delivered to X-Caliber, the Receivership Debtors and the Committee no later than the thirtieth (30th) day of each month.

iii.     The Budgets shall at all times account for the Receiver paying post-receivership expenses of the Receivership Debtors as and when due.

iv.     Commencing on Thursday, May 30, 2024, and continuing on the Thursday of each week thereafter, Receiver shall prepare and deliver to X-Caliber, the Receivership Debtors and the Committee (x) a report showing actual cash receipts and disbursements of the Receivership Debtors for the preceding Monday through the following Sunday, (y) a written explanation in reasonable detail of all material variances to the currently applicable Budget, and (z) an AP aging report for all accounts payable incurred by the Receivership Debtors on and after the date of the Receiver's appointment.

v.      During the Sale Period (as defined below), the Receiver shall participate in weekly conference calls, if requested by the Receivership Debtors and/or Committee, with respect to the operations of the Receivership Debtors; following the Sale Period, such calls shall be reduced to no more than twice a month.

vi.     On or before June 15, 2024, the Receiver shall deliver to the Debtors, with a copy to the Committee, (x) financial statements (consisting of balance sheets, income statements, and cash flow statements) for each of the Receivership Debtors, on an entity-by-entity basis, for the months ending March 31, 2024 and April 30, 2024.  For each month thereafter, the Receiver shall deliver the aforementioned financial statements to the Debtors and Committee no later than 30 days after the end of the preceding month.  The Receiver and the Debtors shall promptly work together in good faith to complete the financial statements (consisting of balance sheets, income statements and cash flow statements) for the months ending January 31, 2024 and February 29, 2024.

vii.    Further reporting requirements and/or Budget compliance parameters may be agreed upon by unanimous agreement between X-Caliber, the Receivership Debtors and the Committee, which agreement shall not be unreasonably withheld by any of the Parties.

2.      Sale Process. The Receivership Debtors, the X-Caliber HUD Entities, and their respective assets, operations, rights, and obligations, shall be included in the Debtors' sale process conducted by Walker & Dunlop Investment Sales, LLC ("Walker & Dunlop"), the Debtors'

proposed investment sales broker, from entry of the Order through July 15, 2024 (the "Sale Period").

        a.        Good Faith Obligations; Cooperation.

        i.        The Parties (including, for the sake of clarity, the Receiver, Walnut Creek, the Receivership Debtors and the X-Caliber HUD Entities) shall, in good faith, reasonably cooperate with the Debtors' sale process.

        ii.        Any offers (formal or informal) received by the X-Caliber HUD Entities (via the Receiver, Walnut Creek, or otherwise), X-Caliber, or X-Caliber Capital with respect to any assets of the Debtors (including the Receivership Debtors) or the X-Caliber HUD Entities, shall be provided to the Debtors' undersigned counsel (with a copy to Committee's undersigned counsel) within twenty-four hours after receipt (or if received before entry of the Order, within 24 hours after entry of the Order). Such obligation shall continue throughout the Sale Period.

        iii.        During the Sale Period, the Debtors shall reasonably cooperate with data requests from X-Caliber, Receiver and Walnut Creek, to the extent such information is reasonably available to the Debtors, including, without limitation, with respect to audits of the Receivership Debtors and/or X-Caliber HUD Entities if required by the U.S. Department of Housing and Urban Development ("HUD").

        iv.        X-Caliber and X-Caliber Capital shall receive periodic updates on the progress of the sale process with respect to the Receivership Debtors and X-Caliber HUD Entities, including, without limitation, weekly status calls, if requested by X-Caliber, X-Caliber Capital, and/or the Receiver. Within twenty-four hours of receipt, the Debtors shall provide to X-Caliber and X-Caliber Capital's undersigned counsel, and the Receiver and the Receiver's counsel

10

(Jason Sleezer), of all unredacted copies of any letters of intent or formal indications of interest received with respect to the Receivership Debtors and X-Caliber HUD Entities.

    b. <u>Binding Offer Requirements</u>.  Any binding offer (as described herein) that contemplates the purchase of any of the assets of non-Receivership Debtors and one or more of either (i) the Receivership Debtors or (ii) the X-Caliber HUD Entities must include an allocation of the proposed purchase price to each entity and/or facility.

    c. <u>Receivership Debtor Sale</u>. Upon the receipt of one or more binding offers (subject to Court approval) that are acceptable to the Debtors (after consultation with the Committee) and X-Caliber (the "<u>X-Caliber Consent Right</u>") for all or substantially all of the assets of one or more of the Receivership Debtors, the suspension of the Receivership Debtors' Chapter 11 Cases shall be lifted to allow the Receivership Debtors, in consultation with the Committee, to finalize a sale under section 363 of the Bankruptcy Code.  This Stipulation and the Order shall not impede the rights of the United States Trustee to request relief from the Court upon the lifting of the suspension of the Receivership Debtors' Chapter 11 Cases with respect to Receivership Debtors' governance or status as debtors-in-possession.  X-Caliber's acceptance of offers to purchase Receivership Debtors shall not be unreasonably withheld.  The X-Caliber Consent Right shall not apply if a binding offer(s) reflects a purchase price allocation to the Receivership Debtors that is sufficient to pay (i) all obligations (the "<u>X-Caliber Debt</u>") of Receivership Debtors to X-Caliber pursuant to that certain Amended and Restated Loan Agreement dated as of February 24, 2021, as supplemented, modified, amended, restated or replaced from time to time and together with the related loan documents (the "<u>X-Caliber Loan Documents</u>") and all administrative expenses incurred by Receivership Debtors' receivership estate from and after January 25, 2024 (the "<u>Receivership Debtors Receivership Expenses</u>" and together with the X-Caliber Debt, the "<u>X-</u>

Caliber Allocation") and (ii) any sales commission incurred by Walker & Dunlop with respect to such entity or entities (the "Commission").  Should X-Caliber decline to provide consent to one or more binding offer(s) as described in this paragraph, based solely on the failure of the purchase price to satisfy the X-Caliber Allocation and the Commission, such itemized X-Caliber Allocation shall be promptly provided to counsel for the Debtors and the Committee.

   d. <u>X-Caliber HUD Entity Sale</u>.  Upon receipt of one or more binding offer(s) for the assets of one or more of the X-Caliber HUD Entities, with the consent of X-Caliber HUD Entities (via the Receiver) and X-Caliber Capital (the "<u>X-Caliber Capital Consent Right</u>"), in consultation with the Committee, the respective X-Caliber HUD Entity or Entities shall file voluntary petitions for relief under chapter 11 of the Bankruptcy Code for administration with these Chapter 11 Cases, including to effectuate a sale section 363 of the Bankruptcy Code.  The Receiver and X-Caliber Capital shall cooperate with the Debtors to ensure the subject X-Caliber HUD Entity or Entities are able to meet any and all obligations within their respective Chapter 11 Case including, but without limitation, any reporting to the United States Trustee for the District of Delaware.  This Stipulation and the Order shall not impede the rights of the United States Trustee to request relief from the Court upon the filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code with respect to the X-Caliber HUD Entities' governance or status as debtors-in-possession.  Consent to binding offer(s) by the X-Caliber HUD Entities/Receiver and X-Caliber Capital shall not be unreasonably withheld.  The X-Caliber Capital Consent Right shall not apply if a binding offer(s) reflects a purchase price allocation to the X-Caliber HUD Entities that is sufficient to pay (i) all obligations (the "<u>X-Caliber Capital Debt</u>") of X-Caliber HUD Entities to X-Caliber Capital pursuant to the Healthcare Facility Notes dated as of April 1, 2022, as supplemented, modified, amended, restated or replaced from time to

12

time and together with all the related loan documents (the "X-Caliber Capital Loan Documents")

and all administrative expenses incurred by the X-Caliber HUD Entities' receivership estate from

and after February 13, 2024 (the "X-Caliber HUD Entities Receivership Expenses" and together

with the X-Caliber Capital Debt, the "X-Caliber Capital Allocation") and (ii) any Commission.

Should X-Caliber Capital decline to provide consent to one or more binding offer(s) as described

in this paragraph, based solely on the failure of the purchase price to satisfy the X-Caliber Capital

Allocation and the Commission, such itemized X-Caliber Capital Allocation shall be promptly

provided to counsel for the Debtors and the Committee.

3.    Sale Proceeds.

    a.    Subject to paragraph 7 herein, the allocated proceeds of any sale involving

one or more Receivership Debtors shall be applied in the following order:

        i.    payment of the respective Commission;

        ii.    payment of the Receivership Debtors Receivership Expenses;

        iii.    payment of the X-Caliber Debt; and

        iv.    the remainder to the Debtors' estates.

    b.    The allocated proceeds of any sale involving one or more X-Caliber HUD

Entities shall be applied in the following order:

        i.    payment of the respective Commission;

        ii.    payment of the X-Caliber HUD Entities Receivership Expenses;

        iii.    payment of the X-Caliber Capital Debt; and

        iv.    the remainder to the Debtors' estates.

For the avoidance of doubt, the aforementioned payment priority structure shall only apply to the

proceeds of a sale that are allocated to the respective Receivership Debtor(s) or X-Caliber HUD

Entities, and not to any other Debtors.

4.      <u>No Offers; Broker Discussions</u>.  If no binding offers are received by Walker &
Dunlop, or any of the Parties, as to a given Receivership Debtor or X-Caliber HUD Entity by June
30, 2024, on July 1, 2024, with the Debtors' and Committee's consent (which such consents shall
not be unreasonably withheld), the Receiver may begin confidential discussions with a broker or
brokers regarding the marketing of the respective Receivership Debtor(s) or X-Caliber HUD
Entity(ies), which would begin upon expiration of the Sale Period.

5.      <u>Expiration of the Sale Period</u>.  Upon expiration of the Sale Period, with respect to
any and all Receivership Debtors for whom relief from the Order has not been sought pursuant to
Paragraph 2(c) above (the "<u>Non-Sale Receivership Debtors</u>"), the suspension of their Chapter 11
Cases pursuant to 11 U.S.C. § 305 shall remain in place (unless otherwise agreed by X-Caliber) to
permit governance pursuant to the *El Paso* Order.  The Parties further agree:

a.      The Non-Sale Receivership Debtors may be marketed by a broker engaged
by the Receiver in a sale process governed by the District Court and the *El Paso* Order.

b.      Any restrictions present in the sale process in these Chapter 11 Cases will
be of no force or effect on the Receiver's sale process.

c.      No Commission shall be owed by the Non-Sale Receivership Debtors.

d.      The Debtors and their advisors shall, in good faith, reasonably cooperate
with the Receiver's sale process.

e.      After conclusion of a sale process by Receiver for the Non-Sale
Receivership Debtors and Receiver's payment of the X-Caliber Debt and the Receivership Debtors
Receivership Expenses, (i) the suspension of such Non-Sale Receivership Debtors' Chapter 11
Cases shall be lifted and (ii) the Receiver will remit any remaining net sale proceeds and remaining
estates of the Non-Sale Receivership Debtors to the Debtors.

14

6.      DIP Provisions.  If and to the extent the suspension of Receivership Debtors'

Chapter 11 Cases is terminated other than pursuant to Paragraph 5(e) above, Paragraph 38 of the

*Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Security*

*Interests and Superpriority Administrative Expense Status, (III) Granting Adequate Protection to*

*Certain Prepetition Secured Credit Parties, (IV) Modifying the Automatic Stay; (V) Authorizing*

*the Debtors to Enter into Agreements with JMB Capital Partners Lending, LLC, (VI) Authorizing*

*Use of Cash Collateral, and (VII) Granting Related Relief* [Docket No. 313] (the "DIP Order")

shall take effect as to the protective advances made by X-Caliber as to the subject Receivership

Debtor(s) retroactive to the Petition Date and during the Chapter 11 Cases.

7.      Nokomis Carve-Out.  Notwithstanding anything to the contrary, to the extent

Debtors sell Nokomis Rehabilitation & Health Care Center, the proceeds of such sale (the

"Nokomis Proceeds") shall be applied in the following order:

a.      Payment of the DIP Liens (as defined in the DIP Order) to the extent of the
        Attributable Cost Allocation for Nokomis Rehabilitation & Health Care
        Center and payment of the Consenting Lender Adequate Protection Claims
        to the extent set forth in the DIP Order;

b.      the remainder evenly divided as follows:

        i.      50% to the Debtors' bankruptcy estates for the benefit of unsecured

                creditors; and

        ii.     50% to the Debtors' bankruptcy estates for the payment of any and

                all administrative expenses allocable to any of the Receivership

                Debtors and the X-Caliber HUD Entities in these Chapter 11 Cases.

None of the Receivership Debtors, the X-Caliber HUD Entities, X-Caliber, X-Caliber Capital or

Receiver nor any of their assets or operations shall be otherwise liable for any fees, expenses, or

charges of the Chapter 11 Cases and any and all claims for surcharge under Section 506(c) of the

15

Bankruptcy Code or otherwise and any and all claims under the "equities of the case" exception under Section 552(b) of the Bankruptcy Code are barred by this Order, other than proceeds that are payable pursuant to Paragraphs 3.a.iv and 3.b.iv herein.

      8.      <u>Agreements; Mutual Releases</u>.

      a.      <u>X-Caliber Debt and Collateral</u>.  The Debtors and the Committee agree that the X-Caliber Debt constitutes legal, valid, binding, enforceable and non-avoidable obligations of the Receivership Debtors, and is not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and the Debtors and/or the Committee shall not assert and hereby forever release and are forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the X-Caliber Debt.  The X-Caliber Debt is secured by valid, perfected, enforceable and non-avoidable first-priority security interests and liens granted by the Receivership Debtors in (i) all assets of the Receivership Debtors and (ii) in the real property on which the following facilities are operated: Flora Gardens Care Center, Nokomis Rehabilitation & Health Care Center, Rochelle Gardens Care Center, Rochelle Rehabilitation and Health Care Center, Whispering Oaks and Willow Rose Rehab & Health Center to the full extent set forth in the X-Caliber Loan Documents (subparagraphs (i) and (ii) collectively, the "<u>X-Caliber Collateral</u>") and such security interests are perfected and have priority over all other security interests.  The Debtors do not possess and the Debtors and/or the Committee shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of X-Caliber's liens, claims or security in the X-Caliber Collateral.  The foregoing admissions, stipulations, agreements, releases and waivers

16

are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with

expanded powers, any other estate representative, and all creditors and parties-in-interest and all

of their successors and assigns, including, without limitation, the Committee.

        b.        <u>X-Caliber Capital Debt and Collateral</u>.   The Debtors, the X-Caliber HUD

Entities and the Committee agree that the X-Caliber Capital Debt constitutes legal, valid, binding,

enforceable and non-avoidable obligations of the X-Caliber HUD Entities, and is not subject to

any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the

Bankruptcy Code or any other applicable law, and the Debtors do not possess and the Debtors

and/or the Committee shall not assert and hereby forever release and are forever barred from

bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would

in any way affect the validity, enforceability and non-avoidability of any of the X-Caliber Capital

Debt.   The X-Caliber Capital Debt is secured by valid, perfected, enforceable and non-avoidable

first-priority security interests and liens granted by the X-Caliber HUD Entities in all of their assets

to the full extent set forth in the X-Caliber Capital Loan Documents (the "<u>X-Caliber Capital

Collateral</u>") and such security interests are perfected and have priority over all other security

interests.   The X-Caliber HUD Entities and the Debtors do not possess and the Debtors, the X-

Caliber HUD Entities and/or the Committee will not assert any claim, counterclaim, setoff or

defense of any kind, nature or description which would in any way affect the validity,

enforceability and non-avoidability of any of X-Caliber Capital's liens, claims or security in the

X-Caliber Capital Collateral.   The foregoing admissions, stipulations, agreements, releases and

waivers are and shall be binding on the Debtors, any subsequent trustee, responsible person,

examiner with expanded powers, any other estate representative, the X-Caliber HUD Entities, and

all creditors and parties-in-interest and all of their successors and assigns, including, without limitation, the Committee.

c.      Estate Releases.  By execution of this stipulation, the Debtors and the Committee each acknowledges and confirms that the Debtors and their estates do not have any offsets, defenses, claims or counterclaims against X-Caliber, X-Caliber Capital or any of their subsidiaries, affiliates, officers, directors, employees, agents, attorneys, predecessors, successors or assigns (collectively, the "X-Caliber Parties") whether asserted or unasserted.  The Debtors, on behalf of themselves and their estates (collectively, the "Debtor Parties"), jointly and severally, release and forever discharge the X-Caliber Parties of and from any and all manner of action and actions, cause and causes of action, suits, debts, controversies, damages, judgments, executions, claims, counterclaims and demands whatsoever, asserted or unasserted, in law or in equity (collectively, the "Claims") which the Debtor Parties ever had or now have upon or by reason of any manner, cause, causes or thing whatsoever, including any presently existing claim, counterclaim or defense whether or not presently suspected, contemplated or anticipated, known or unknown, including, without limitation, in connection with the X-Caliber Debt and the X-Caliber Capital Debt; provided that the foregoing release shall not operate to waive or release any obligations of X-Caliber under this Stipulation.  The Debtors and the Committee each acknowledge that the foregoing release is a material inducement to the decision of X-Caliber and X-Caliber Capital to extend the accommodations under this Stipulation and has been relied upon by X-Caliber and X-Caliber Capital in entering into this Stipulation.  The foregoing releases and waivers are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-

interest and all of their successors and assigns, including, without limitation, the Committee, any plan administrator, post-confirmation trustee, or similar estate fiduciary.

        d.      <u>X-Caliber Releases</u>.  By execution of this Stipulation, the X-Caliber Parties, jointly and severally, release and forever discharge the Debtor Parties of and from the Claims which the X-Caliber Parties ever had or now have upon or by reason of any manner, cause, causes or thing whatsoever, including any presently existing claim, counterclaim or defense whether or not presently suspected, contemplated or anticipated solely with respect to the Debtors' act of filing of these Chapter 11 Cases, which X-Caliber alleges was a violation of the *El Paso* Order. The foregoing releases and waivers are and shall be binding on the X-Caliber Parties, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-interest and all of their successors and assigns.

    9.      <u>DIP Order Interpretation</u>.  The Parties agree and acknowledge that the provisions of Paragraph 13(i) of the DIP Order that refer to the proceeds of the sale of assets of:

        a.      the Receivership Debtors means such proceeds that are to be paid to the Debtors' estates pursuant to Paragraph 3(a)(iv) above;

        b.      the X-Caliber HUD Entities means such proceeds that are to be paid to the Debtors' estates pursuant to Paragraph 3(b)(iv) above; and

        c.      Petersen Health Care X, LLC and Petersen Health Network, LLC means such proceeds that are available to the Debtors' estates after payment in full of the X-Caliber Debt.

    10.     <u>Final Resolution</u>.  This Stipulation shall constitute the final resolution of the Resolved Pleadings. Therefore, the Motion to Dismiss, 543 Motion, DIP Objection, and MT4 Motion are hereby resolved upon entry of the Order.

19

11.     <u>Notice</u>.  Any notice, consent, or consultation shall be provided, sought, or obtained for the respective Party by and through their undersigned counsel.

12.     <u>Miscellaneous.</u>

a.     The undersigned who executes this Stipulation by or on behalf of each respective party represents and warrants that they have been duly authorized and empowered to execute and deliver this Stipulation on behalf of such party.

b.     This Stipulation may be executed in counterparts and each such counterpart together with the others shall constitute one and the same instrument.

c.     This Stipulation shall not be modified, altered, amended, or vacated without the written consent of the Parties hereto.

d.     The Parties are hereby authorized to take such further actions as are necessary effectuate this Stipulation.

13.     <u>Jurisdiction</u>.  This Stipulation shall remain subject to the jurisdiction of the Bankruptcy Court with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Stipulation.

14.     <u>Immediate Effect</u>. This Stipulation and the Order shall become effective immediately upon entry of the order by the Court, notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure or otherwise.

*[Remainder of page intentionally left blank]*

Dated: May 21, 2024

**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**

/s/ *Shella Borovinskaya*
Andrew L. Magaziner (No. 5426)
Shella Borovinskaya (No. 6758)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:    (302) 571-1253
Email:    amagaziner@ycst.com
              sborovinskaya@ycst.com
              ccox@ycst.com


and

**WINSTON & STRAWN LLP**
Daniel J. McGuire (admitted *pro hac vice*)
Gregory M. Gartland (admitted *pro hac vice*)
35 W. Wacker Drive
Chicago, IL 60601
Telephone:   (312) 558-5600
Facsimile:    (312) 558-5700
Email:        dmcguire@winston.com
Email:        ggartland@winston.com

and

Carrie V. Hardman (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Telephone:   (212) 294-6700
Facsimile:    (212) 294-4700
Email:        chardman@winston.com


*Counsel for the Debtors and Debtors in*
*Possession*

**BLANK ROME LLP**

/s/ *Jordan L. Williams*
Lawrence R. Thomas III (No. 6935)
Jordan L. Williams (No. 7128)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:   (302) 425-6400
Facsimile:    (302) 425-6464
Email: Lorenzo.thomas@blankrome.com
          Jordan.Williams@blankrom.com

-and-

Kenneth J. Ottaviano (*pro hac vice*)
Paige B. Tinkham (*pro hac vice*)
444 West Lake Street, Suite 1650
Chicago, Illinois 60606
Telephone:   (312) 776-2500
Facsimile:    (215) 569-5555
Email: Ken.Ottaviano@blankrome.com
          Paige.Tinkham@blankrome.com

*Counsel to X-Caliber Funding LLC and X-*
*Caliber Capital LLC*

/s/ *Michael Flanagan*
**Michael Flanagan**, *in his capacity as*
*Receiver of the X-Caliber HUD Entities*

**GREENBERG TRAURIG, LLP**

/s/ *Dennis A. Meloro*
Anthony W. Clark (DE Bar No. 2051)
Dennis A. Meloro (DE Bar No. 4435)
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801
Tel:  (302) 661-7000
Anthony.clark@glaw.com
melorod@gtlaw.com

-and-

Nancy A. Peterman (*admitted pro hac vice*)
Danny Duerdoth (*admitted pro hac vice*)
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel:  (312) 456-8400
petermann@gtlaw.com
duerdoth@gtlaw.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors*