---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

X-CALIBER FUNDING, LLC, as servicer for US BANK, N.A., as trustee of the XCAL 2019-IL-1 MORTGAGE TRUST

                Plaintiff,

- against -

MARK PETERSEN,

                Defendant.

---

MARK PETERSEN,

                Third-Party Plaintiff,

JOSEPHB C. TUERA, WALNUT CREEK MANAGEMENT, L.L.C, and ILLINOIS DEBT ACQUISITION COMPANY, L.L.C.,

                Third-Party Defendants.

---

**24 Civ. 5529 (VM)**

**ORDER**

**VICTOR MARRERO, United States District Judge.**

    Plaintiff X-Caliber Funding LLC ("X-Caliber") commenced this action in New York State court by filing a summons with notice and a summary judgment motion in lieu of complaint, as permitted by N.Y. C.P.L.R. § 3213 ("CPLR § 3123"). (Dkt. No. 1-1). X-Caliber, acting as servicer for U.S. Bank, N.A. (U.S. Bank), seeks repayment of a defaulted loan (the "Loan"), guaranteed by Defendant Mark Petersen ("Petersen"), to seven limited liability companies (the "LLCs"). Pending before the Court is Petersen's request for a pre-motion conference so as to file a motion to stay all proceedings in this matter

until an order is issued in a parallel receivership action before the Northern District of Illinois, X-Caliber Funding LLC, as servicer for XCAL 2019-IL-1 Mortgage Trust v. El Paso HCC, LLC et al., No. 3:24-cv-50034 (the "Illinois Action"), which would potentially approve the sale of certain nursing home facilities (the "Facilities") serving as collateral for the Loan. For the reasons stated below, Petersen's request for a pre-motion conference is **DENIED** and his proposed motion for a stay is **DENIED**.

I.   FACTUAL BACKGROUND

On February 24, 2021, X-Caliber entered into a loan agreement (the "Loan Agreement") with the seven LLCs that operated the nursing home Facilities in Illinois. (Dkt. 1-1 at 213.) Petersen was the principal of each LLC at the time the Loan Agreement was executed. (Id. at 212.) Under the terms of the Loan Agreement, X-Caliber provided a Loan in the principal amount of $40,000,000 subject to interest rates and default rates. (Id. at 214.) In approximately April 2022, Petersen executed an agreement (the "Security Agreement") with X-Caliber wherein Petersen guaranteed all the LLCs' obligations under the Loan Agreement. (Id.)

In December 2023, the LLCs allegedly defaulted on the Loan. Pursuant to the Loan Agreement, X-Caliber demanded payment in full of all outstanding obligations. (Id. at 215-

16.) X-Caliber alleges that the LLCs and Petersen have not paid the outstanding balance or made any principal payments on the Loan since December 2023, in violation of the Loan Agreement. (Id.)

On January 23, 2024, X-Caliber commenced the Illinois Action seeking foreclosure and enforcement of its security interests in the Facilities under the Loan Agreement. (See Illinois Action, Dkt. No. 1.) The court in the Illinois Action appointed Michael F. Flanagan ("Flanagan") as Receiver of the LLCs and their respective Facilities. (See Illinois Action, Dkt. No. 8.) In turn, Flanagan appointed Joseph Tutera ("Tutera") to manage the day-to-day operations of the Facilities during the Receivership. (Id.; Dkt. No. 13 at 10.) On January 28, 2025, Flanagan filed a notice of motion for an order setting sale procedures for the sale of defendant's assets. (Id.; Dkt. No. 93 [the "Sale Procedure Motion"].) The Sale Procedure Motion proposes a sale process of the Facilities wherein notice of a public sale of the Facilities would be posted in the newspapers regularly with bids submitted no later than five weeks after the date of the first publication. (Id. at 8.)[1]

---

[1] Petersen, a proposed intervenor in the Illinois Action, objects to the Sale Procedure Motion on various grounds including that the use of hybrid sale on the courthouse steps and Zoom is procedurally deficient, the deposit and closing requirements are overly restrictive, and the lack of court-supervised sale order. ("Illinois Action, Dkt. No. 105 at 4-8.)

3

Separately, on August 29, 2024, X-Caliber initiated the instant action in New York Supreme Court, New York County, to enforce Petersen's guarantee of the Loan and moving for summary judgment in lieu of a complaint, pursuant to CPLR § 3213. (See Dkt. No. 1). Petersen removed the action to the Southern District of New York and filed an opposition to X-Caliber's motion for summary judgment. (Dkt. No. 25.). Petersen subsequently brought a counterclaim against X-Caliber as well as third-party claims against Tutera, Illinois Debt Acquisition Company ("IDAC"), and Walnut Creek Management, LLC (collectively, the "Third-Party Defendants").[2] (Dkt. Nos. 28, 29.) Petersen's third-party claims and counterclaim generally allege that X-Caliber colluded with the Receiver and the Third-Party Defendants to harm Petersen by depreciating the value of the Facilities, and to increase his personal obligation under the Loan. (See Dkt. No. 28 ¶¶ 53-80; Dkt. No. 29 ¶¶ 55-81.) X-Caliber and Third-Party Defendants have filed motions to dismiss Petersen's claims.

---

[2] Tutera and his management company, Walnut Creek, were selected by Flanagan to manage the Facilities. (Dkt. No. 29 ¶ 46.) IDAC is another entity that Tutera allegedly organized. (Id. ¶ 78.) According to Petersen's Third-Party Complaint, X-Caliber assigned all debt and accompanying loan documents to IDAC, which then assigned back to X-Caliber its claims against Petersen under the Guaranty. (Id. ¶¶ 78-80.)

4

On February 19, 2025, Petersen submitted a request for a pre-motion conference to consider a proposed motion to stay all proceedings in this matter pending an order from the Illinois Court approving proposed sale procedures for the sale of the Facilities. X-Caliber and Third-Party Defendants submitted letters opposing the request.

## II.   DISCUSSION

The decision whether to issue a stay is within a district court's discretion. Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A., 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009). Courts routinely issue stays when "awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed." Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 17-CV-5916 (AJN), 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018). For example, courts may issue a stay when the pending action would resolve a controlling point of law, see Mayors v. Port Imperial Ferry Corp., No. 24-cv-6815, 2025 WL 34830, at *2 (S.D.N.Y. Jan. 3, 2025), or when a stay would minimize the possibility of conflicts between different courts. See Catskill Mountains, 630 F. Supp. 2d at 304-05.

In deciding whether to stay proceedings, courts in this Circuit examine the following considerations: (1) the private

interests of the plaintiffs in proceeding, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of persons not parties to the civil litigation, and (5) the public interest. Id. Ultimately, "the inquiry centers around prejudice." Bakken Resources, Inc. v. Edington, No. 15-cv-8686, 2018 WL 1353271, at *5 (S.D.N.Y. Mar. 15, 2018).

The Court is not persuaded that a stay is necessary in this action. Petersen argues that a stay is warranted because, in the Illinois Action, Flanagan filed the Sale Procedure Motion seeking court approval of a proposed sale procedure to begin soliciting bids for the Facilities. Petersen contends that should the Facilities sell for the amount of his obligations on the Loan, he would have no liability under the Guaranty and thereby X-Caliber's claim against Petersen would be moot. Petersen further argues that he will be prejudiced if the Court grants X-Caliber's motion for summary judgment and enters judgment for a monetary amount greater than what is owed after the sale of the Facilities.

Regarding Petersen's argument that the sale of the Facilities may decrease his exposure under the Guarantee, Petersen confuses the question of his liability with the question of satisfaction of judgment. Even if the Court were to find Petersen liable for full payment under the Guarantee,

6

the Court will not rule out reserving the question of the precise amount of monetary relief X-Caliber may be owed for additional briefing. See City of New York v. Liberty Mut. Ins. Co., No. 15 Civ. 8220, 2017 WL 4386363, at *19 (S.D.N.Y. 2017) (reserving the question of the "precise amount of" damages owed for additional briefing after resolving summary judgment on liability.) Additionally, the Court notes that Petersen's argument that sale of the Facilities may wipe out his liability contradicts his counterclaim and third-party claims, which allege that the Counterclaim and Third-Party Defendants depreciated the Facilities' value.

Moreover, while Petersen represents that the stay would be of "limited duration," there is no indication that a sale of the Facilities at issue is imminent. Petersen himself has objected to the proposed sale procedures, as have other parties in the Illinois Action. Given the uncertainties as to when a final sale of the Facilities would actually occur, "a stay of such indefinite duration cannot be granted." U.S. v. Banco Cafetero Intern, 107 F.R.D. 361, 366 (S.D.N.Y. 1985). Moreover, no bids have been made for the Facilities and there is no indication whatsoever of their actual value. Therefore, Petersen's rationale behind a purported stay is too speculative to justify staying this entire proceeding,

7

especially given Petersen's assertions in his counterclaim and third-party claims.

Turning to Petersen's counterclaim and third-party claims, the Illinois Action has little bearing on their resolution at this juncture. Petersen's counterclaim alleges that X-Caliber breached the covenant of good faith and fair dealing by scheming with the Receiver's entities to Facilities' value in order to increase Petersen's exposure under the Guarantee. (See Dkt. No. 28 at 11, 16.) Similarly, Petersen's third-party complaint asserts "prima facie tort" and "alter ego liability" against Third-Party Defendants, based on the same alleged scheme. (See Dkt. No. 29 at 16-17.) As noted above, the rationale that a stay is necessary because the Facilities may sell for at least as much as his obligation under the Guarantee contradicts the premise of these claims.

Regardless of those contradictions, the Court sees no reason why resolving the pending motions to dismiss the counterclaim and third-party claims, at minimum, would prejudice Petersen in relation to the Illinois Action. If the Court allows Petersen's various claims against X-Caliber and the Third-Party Defendants to proceed to discovery, Petersen will have the opportunity to prove the existence of the scheme he complains about, including whether X-Caliber and Walnut Creek intentionally halted interest payments to increase

8

Petersen's exposure, and whether Tutera's new policies are intended to reduce the Facilities' profitability. (See Dkt. No. 29 ¶¶ 57, 61.) Indeed, Petersen has argued that discovery is needed in order to prove that the "Receiver *intentionally* depreciated the Facilities." (See Dkt. No. 25 at 28) (emphasis added). As such, Petersen's newfound concerns about the "needless costs of discovery and pre-trial litigation" are unavailing as the only reason this case would proceed to discovery would stem from Petersen's own counterclaim and third-party claims, given that X-Caliber has moved for summary judgment.

### III. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion of defendant Mark Petersen ("Petersen") seeking a pre-motion conference to consider a proposed motion to stay all proceedings in this matter is **DENIED**; and it is further

**ORDERED** that Petersen and Plaintiff X-Caliber Funding, LLC, as servicer for US Bank, N.A., as trustee of the XCAL 2019-IL-1 Mortgage Trust, shall submit to the Court a joint status report regarding the pending sale of the Facilities, such report to be filed either by June 10, 2025, or upon a court approval of the sale of the Facilities, whichever happens first.

9

**SO ORDERED.**

Dated:     14 March 2025
           New York, New York

_____
                                Victor Marrero
                                   U.S.D.J.